**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY HILLBLOOM, et al., | CASE NO. CV F 07-1467 LJO SMS |
| Plaintiffs, | **ORDER ON SHERIFF PIERCE'S MOTION FOR JUDGMENT ON PLEADINGS** |
| vs. | (Doc. 88.) |
| COUNTY OF FRESNO, et al, | |
| Defendants. / | |

## INTRODUCTION

Former Fresno County Sheriff Richard Pierce ("Sheriff Pierce") seeks F.R.Civ.P. 12(c) judgment on plaintiffs' state law negligent employment, training and supervision claim in that California law bars the claim. Plaintiffs respond that "Sheriff Pierce has failed to prove his entitlement to judgment as a matter of law." This Court considered Sheriff Pierce's F.R.Civ.P. 12(c) motion on the record and VACATES the August 26, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court GRANTS Sheriff Pierce judgment on the pleadings.

## BACKGROUND[1]

### The Parties

Plaintiffs Terry Hillbloom ("Mr. Hillbloom") and Sandra Hillbloom ("Mrs. Hillbloom") are

---

[1] The factual summary is derived generally from plaintiffs' operative First Amended Complaint for Damages ("FAC").

1

married and are the grandparents and guardians ad litem of minor plaintiff Michael L., who was age 14 at the time of the events at issue.[2]

The FAC alleges 42 U.S.C. 1983 illegal warrantless arrest and state tort claims against the County of Fresno ("County"), Sheriff Pierce, County Sheriff's Sergeants Kathy Carreiro ("Sgt. Carreiro") and E. Broughton ("Sgt. Broughton"), and County Sheriff's Deputy Robert Carey ("Deputy Carey").

**Plaintiffs' Claims**

Plaintiffs' claims arise out of Deputy Carey's alleged unlawful entry of Mr. and Mrs. Hillbloom's Parlier home and subsequent arrest of Mr. Hillbloom on April 25, 2006. In short, Deputy Carey was dispatched to Mr. and Mrs. Hillbloom's home to respond to a 911 telephone call that Michael L. refused to leave the home with Kimberly L., Michael's mother and Mr. and Mrs. Hillbloom's daughter. Kimberly L. invited Deputy Carey into the home although she did not reside in the home and lacked consent for Deputy Carey's entry. Mr. Hillbloom encountered Deputy Carey in the home and demanded that Deputy Carey leave. Deputy Carey violently seized and handcuffed Mr. Hillbloom, shoved him out of the house, and locked him in Deputy Carey's patrol vehicle where Mr. Hillbloom waited without his insulin pump which was pulled off his belt during his arrest. Mr. Hillbloom was allowed a new insulin pump after Sgt. Broughton arrived.

Sgt. Broughton and Deputy Carey issued Mr. Hillbloom a citation for violation of California Penal Code section 148(a)(1) (resisting, delaying or obstructing peace officer). Mr. Hillbloom was processed and detained for hours. Deputy Carey prepared a crime report with false statements, and Sgt. Carreiro approved the report although she knew or should have known that allegations of Mr. Hillbloom's criminal conduct were untrue and unfounded.

On November 1, 2006, the Fresno County District Attorney's office dismissed the charge against Mr. Hillbloom in that Deputy Carey had entered Mr. and Mrs. Hillbloom's home without a warrant, consent or exigent circumstances.

At issue here is the FAC's sixth claim for negligent employment, training and supervision, the

---

[2] Mr. and Mrs. Hillbloom and Michael L. will be referred to collectively as "plaintiffs."

only claim against Sheriff Pierce. The claim alleges that Sheriff Pierce and others:

1. Knew or should have known that Deputy Carey "had a character trait and practice" for abuse of authority, making warrantless arrests without probable cause, use of excessive force, and creating false crime reports to cover his misconduct;

2. Knew or should have known that Deputy Carey was emotionally unstable and prone to abuse of authority and was unfit as a law enforcement officer;

3. "[N]egligently and carelessly failed properly to hire, train, assign, discipline and/or control" Deputy Carey and sergeants; and

4. "[F]ailed to provide policies and procedures to ensure meaningful reporting, monitoring and investigation of the misuse and abuse of authority by Fresno County Sheriff's deputies, and failed adequately to supervise personnel as to their duties and obligations under law, policy and practice."

The FAC seeks to recover for plaintiffs' physical injury, emotional distress, injury to reputation as well as punitive damages.

## DISCUSSION

### F.R.Civ.P. 12(c) Motion For Judgment On Pleadings Standards

Sheriff Pierce challenges the negligent employment, training and supervision claim in that "California law does not allow plaintiffs to bring suit against public entities and their police agencies for negligence in relation to the hiring, training, and supervision of peace officers."

F.R.Civ.P. 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Associates v. Barclays Bank of California*, 915 F.2d 1355, 1356 (9th Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014 (1991). A F.R.Civ.P. 12(c) motion "is designed to dispose of cases where the material facts are not

1    in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and
2    any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.
3    1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint
4    states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

5    Courts dismiss complaints under F.R.Civ.P. 12(c) for either of two reasons: "(1) lack of a
6    cognizable legal theory, or (2) insufficient facts under a cognizable legal theory." *Gutierrez v. RWD*
7    *Technologies, Inc.*, 279 F.Supp.2d 1223, 1224 (E.D. Cal. 2003).

8    The standards for deciding F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 12(c) motions are the same. *Great*
9    *Plains Trust v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313, n. 8 (5th Cir. 2002). "A Rule 12(c)
10   motion challenges the legal sufficiency of the opposing party's pleadings and operates in much the same
11   manner as a motion to dismiss under Rule 12(b)(6)." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152,
12   1154-1155 (E.D. Cal. 2006).

13   "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if
14   there are no disputed issues of fact and only questions of law remain." *Hughes*, 278 F.3d at 420. A
15   court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are
16   not entitled to the assumption of truth. While legal conclusions can provide the framework of a
17   complaint, they must be supported by factual allegations. When there are well-pleaded factual
18   allegations, a court should assume their veracity and then determine whether they plausibly give rise to
19   an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 1950 (2009).

20   The U.S. Supreme Court applies a "two-prong approach" to address sufficiency of a complaint's
21   allegations:

22   > First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
23   > a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives . . . Determining whether
24   > a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .
25   > But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the
26   > pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

27   *Iqbal*, 556 U.S. __, 129 S.Ct. at 1949-1950.

28   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. __, 129 S.Ct. at 1949.

With these standards in mind, this Court turns to Sheriff Piece's challenges to the negligent employment, training and supervision claim.

**Limited State Claim Liability**

Sheriff Pierce distills the present issue as "whether California law recognizes a plaintiff's ability to maintain suit against a county sheriff (or any member of a law enforcement agency) for alleged negligence in hiring, training or supervision of a peace officer."

Plaintiffs characterize the claim against Sheriff Pierce to allege that Sheriff Pierce "knew or should have known in 1999 (at the time of Deputy Carey's hiring) that Deputy Carey's temper and violent tendencies, as reflected in both his on-duty and off-duty conduct, posed a threat to the public." Plaintiffs note that prior to his Sheriff's Department hiring "material available" about Deputy Carey included:

1. A 1987 guilty plea to disturbing the peace and payment of a $34 fine;
2. A 1988 guilty plea to battery with a sentence of three years probation;
3. A 1991 arrest for being drunk in public;
4. A 1992 arrest for spousal abuse (charges were dismissed);
5. Deputy Carey's admissions that prior to 1993 he had used marijuana and steroids;
6. A 1994 arrest and prosecution for misdemeanors of fighting in public and battery on a woman (charges were dismissed);
7. An unsustained 1994 Internal Affairs investigation into excessive force when Deputy Carey was with the Kerman Police Department;
8. A 1995 Sheriff's Department denial to hire Deputy Carey "due to ongoing domestic problems with his wife"; and
9. A 1998 Sheriff's Department evaluation that "domestic problems are still ongoing."

Plaintiffs further note that "Deputy Carey's conduct after his hiring continued to raise red flags," including:

5

1. Performance evaluation references to transporting a female arrestee without searching or handcuffing her;

2. A July 2000 citizen's complaint by a mother of an arrestee;

3. A *Pitchess* motion alleging Deputy Carey grabbed a pregnant woman, slammed her face on the ground, sat on her, shot a stun gun near her face and humiliated her;

4. A "botched attempt" to terminate Deputy Carey in connection with a May 2002 incident in which Deputy Carey allegedly pushed his stepson, then age 16, to the floor, hit the stepson in the mouth, held his forearm on the stepson's throat, slammed the stepson into a wall repeatedly, and pushed the stepson with both hands; and

5. An August 15, 2002 Order for Disciplinary Action signed by Sheriff Pierce who concluded that Deputy Carey committed misdemeanor child abuse and noted that "this incident appears to be part of a pattern of verbal and physical confrontations between you and your family members. . . . I have concluded that you are unable or unwilling to appropriately manage your personal relationships and control your anger."

Plaintiffs note that Sheriff Pierce "is not being sued as a public entity or a police agency. He is being sued as the chief law enforcement officer of the County of Fresno, who at the time of the Hillbloom incident, had ultimate responsibility for the hiring, training and supervision" of Deputy Carey. Plaintiffs contend that Sheriff Pierce "personally participated in the hiring of defendant Carey, personally identified Carey's unfitness for duty in the attempt to terminate him, and then personally failed to protect the public from an individual already identified as a menace."

Sheriff Pierce responds that the "long list of factual allegations are [sic] completely irrelevant" in that the present motion addresses only the legal issue whether the claim against Sheriff Pierce is barred as a matter of law.

Under the California Government Claims Act ("Claims Act"), "a public employee is liable for injury caused by his act or omission to the same extent as a private person," "[e]xcept as otherwise provided by statute." However, the Claims Act does not provide that a public entity is liable for its own conduct or omission to the same extent as a private person or entity. *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002). California Government Code section 815(a)

provides that a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute."

"A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . ." Cal. Gov. Code, § 815.2(a). However, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability," [e]xcept as otherwise provided by statute." Cal. Gov. Code, § 815.2(b). Thus, § 815 .2 "makes a public entity vicariously liable for its employee's negligent acts or omissions within the scope of employment." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1180, 80 P.3d 656 (2003). However, "liability of the employer only attaches if and when it is adjudged that the employee was negligent," and, although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability." *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1113, 16 Cal.Rptr.3d 521, 547 (2004).

In sum, the Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656 (2003). ("common law principles were insufficient to support a *direct* action in tort against a public entity"); *Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1457, 81 Cal.Rptr.2d 165 (1998) ("in absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable"); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

Sheriff Pierce argues that plaintiffs lack a cognizable claim against him because negligent hiring, training and supervision claims "are not properly made against public employees" given a public entity's

ultimate responsibility for "employee retention." Sheriff Pierce notes that "because a claim of negligent hiring, training, and supervision is, in reality, one against the entity itself, a plaintiff cannot avoid this bar to suit by alleging vicarious liability under California Government Code section 815.2(a)." *Sanders v. City of Fresno*, 2006 WL 1883394, at *12 (E.D. Cal. 2006) ("Since the claims against Chief Dyer for negligent training, retention, discipline, etc. are in reality a direct claim against the City, there is no vicarious liability for Chief Dyer's alleged negligent training, retention, hiring, etc.") Sheriff Pierce continues that a negligent employment, training and supervision claim may be asserted only against a public entity, not against a public employee "for vicarious liability purposes." *See Justin v. City and County of San Francisco*, 2008 WL 1990819, at *11 (N.D. Cal. 2008) ("Because Plaintiffs have not identified any statutory basis for liability against the City, summary judgment is appropriate as to this claim" against municipal police chief and others.)

Plaintiffs respond that they have "identified" Sheriff Pierce "as the responsible employee, and one who personally participated in the challenged decisions." However, plaintiffs have identified no law to support a negligent employment, training and supervision claim against Sheriff Pierce to provide an apparent explanation for their devotion to factual matters extrinsic to the FAC. Through Sheriff Pierce, the FAC essentially alleges a vicarious liability claim against the County. The FAC seeks an end run around the County's limited liability in the absence of a statute to support a negligent employment, training or supervision claim against the County. The claim against Sheriff Pierce duplicates a *Monell* claim against the County, and plaintiffs fail to demonstrate that the claim against Sheriff Pierce is recognized under California law, upon which the claim rests. As such, Sheriff Pierce is entitled to judgment on the pleadings on the claim against him.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS Sheriff Pierce judgment on the pleadings on plaintiffs' claim against Sheriff Pierce and DISMISSES with prejudice plaintiffs' claim against Sheriff Pierce; and
2. DIRECTS the clerk to enter judgment in favor of defendant Fresno County Sheriff Richard Pierce against plaintiffs Terry Hillbloom, Sandra Hillbloom and Michael L. in that there is no just reason to delay to enter such judgment given plaintiffs' claim against

Sheriff Pierce and Sheriff Pierce's alleged liability are clear and distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

**Dated:**     **August 23, 2010**                   /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE